(47 App. Div. 39.)

JONES et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 19, 1900.)·

1. CONTRACTS—BREACH—FUTURE PROFITS.
    Where a city repudiated an improvement contract on a claim that it was invalid, and refused payment of installments due thereunder, the contractor may recover prospective profits.

2. SAME—MUNICIPALITIES.
    Denial by a city comptroller and his deputy of the city's liability under a contract, and their refusal to pay installments, constitutes a breach of the contract by the city.

3. APPEAL—FINDINGS.
    Respondent must abide by a finding of fact against which he has not appealed, since appellant is entitled to its acceptance by the appellate court as true, and to a decision as to the correctness of the legal conclusion drawn therefrom.

Appeal from judgment on report of referee.

Action by Charles Jones and another against the city of New York. From a judgment for plaintiffs for less than the relief demanded, they appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

L. Laflin Kellogg, for appellants.
Arthur C. Butts, for respondent.

BARRETT, J. The sole question here is whether the referee's conclusion that the plaintiffs were not entitled to the profits which they would have realized upon their contract but for the defendant's breach thereof was correct. The referee found as a fact that the plaintiffs had performed the contract on their part, until the defendant refused to pay an installment of $4,535.51, for which a certificate was duly made by the proper officials on the 24th day of March, 1898, which certificate entitled the plaintiffs to payment. He further found that "at many different times the plaintiffs demanded of the comptroller payment" of this sum, but that the comptroller refused to pay it or any part of it; also, that the plaintiffs were "informed by the officers of the defendant that the contract was invalid, and that no further payment could or would be made thereunder." Thereafter the plaintiffs ceased work upon the contract,— having previously notified the defendant that they elected to treat the refusal to pay as a breach,—and brought this action. The learned referee gave the plaintiffs judgment for the value of their services and materials down to the time when they ceased work, but refused damages for loss of profits on work not then done. We do not think this was an accurate conclusion from the facts found. There is undoubtedly a material distinction between the effect of a default in payment of an installment when it becomes due under such a contract as that under consideration, arising from mere temporary inability, and a deliberate refusal, based upon the asserted invalidity of the contract, and the denial of the contractor's right to proceed or to receive any payment thereunder. The former may be a breach which, while it would permit the contractor to abandon the work, and recover for that already done, would not entitle him to prospective profits. Moore v. Taylor, 42 Hun, 58. But the latter goes to the root of the contract, and is equivalent to an abandonment of it in its entirety. Under such circumstances the contractor is entitled to recover prospective profits. Wharton & Co. v. Winch, 140 N. Y. 296, 35 N. E. 591. It was said in the latter case that even "mere delay in making the stipulated payments might be so inexcusable or unreasonable, or so indicative of an utter inability to perform the entire contract, as to be equivalent to a refusal to perform, and a denial of the plaintiff's right to proceed under it." What would be inexcusable or unreasonable delay, however, on the part of an individual or a partnership, or even a business corporation, might not be such in the case of a municipal corporation, with its complete system, operated through independent official agencies. The contractor who deals with such a public corporation should not

look for the same promptitude of payment as though he were dealing with private parties. He must expect occasional delay and inconvenience as the natural result of the necessary formalities prescribed by law, and also from unforeseen contingencies,—such as the exhaustion of the fund applicable to the work. Drhew v. Altoona City, 121 Pa. St. 401, 15 Atl. 636. Here, however, the referee has found that the officers of the city deliberately repudiated the plaintiffs' contract. The "acts, conduct, and declarations" of these officers were equivalent to a deliberate refusal to perform on the city's part. It is said that the official who denied the validity of the plaintiffs' contract, and informed them that no further payments could or would be made thereunder, had no authority to bind the city by such a declaration. The official in question was the deputy comptroller, and he and the comptroller were probably the only officials who could thus speak for the city. They were the officials who had to do exclusively with the machinery of payment. When they asserted the invalidity of the contract, and declared that no payment could or would be made thereunder, the plaintiffs heard the final word on the practical side of the question. They could have no hope thereafter of payment, short of a lawsuit. It is also said that the statement made by the deputy comptroller (Daly) was not as broad as that found by the referee. What Mr. Daly actually said, according to the plaintiffs' testimony, was that they (meaning the comptroller and himself) "could not pay on contracts, on account of the debt limit being overdrawn, as the contract was invalid." We cannot, upon this appeal, quarrel with the referee's paraphrase of this language. It was certainly some evidence tending to support his finding, and, as the plaintiffs are the appellants, they have a right to a review of the legal conclusion drawn therefrom. We may, for the purpose of sustaining a judgment, look into the evidence to supply a fact not found (Foundry Co. v. Hersee, 103 N. Y. 25, 9 N. E. 487), or, possibly, to clarify a fact obscurely found, but not to eliminate or vary, for the benefit of the respondent, a fact which is clearly and distinctly found. The respondent must abide by the finding against which he has not appealed, and upon which the judgment stands, and the appellant has a right to its acceptance by the court as true, and to a decision as to the correctness of the legal conclusion drawn therefrom. Indeed, the court is required, in cases of inconsistency, to accept those findings most favorable to the appellant, and the latter is entitled to rely upon them in aid of his exceptions. Israel v. Railway Co., 158 N. Y. 631, 53 N. E. 517; Parsons v. Parker, 159 N. Y. 16, 53 N. E. 710. We are constrained, therefore, to order a new trial in this case. We do so with regret and reluctance, for we cannot resist the impression that the referee's finding was inadvertent. Mr. Daly distinctly denied the statement attributed to him. The plaintiffs' testimony with regard to it was only brought out in rebuttal, after the defendant had rested its case; and the statement itself might well have been otherwise paraphrased. As it is, however, the judgment must be reversed, and a new trial ordered before another referee, with costs to the appellants to abide the event. All concur.